## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:18-cr-00379-MOD-DCK-1

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **WINSTON MEDLEY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER** comes before the Court on Defendant's pro se Motion for Compassionate Release and appointment of counsel. (Doc. No. 31).

Defendant Winston Medley moves the Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, relying on the threat posed by the COVID-19 pandemic. The United States opposes the motion. The Court denies Defendant's motion. Defendant does not show that extraordinary and compelling reasons warrant a sentence reduction as he does not suffer from any medical conditions that the CDC recognizes to be a risk factor for serious complications from COVID-19. Moreover, Defendant has not established that the § 3553(a) factors weigh in favor of release. Accordingly, Defendant's motion is denied without prejudice. Moreover, because the Court finds that the interests of justice do not weigh in favor of appointing counsel, Defendant's motion for the appointment of counsel will also be denied.

### I.     BACKGROUND

On June 17, 2019, Defendant pleaded guilty to one count of identity theft, in violation of 18 U.S.C. § 1028, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A, and was sentenced to a below-guidelines sentence of 42 months of imprisonment. The convictions

arise out of a scheme to commit identity fraud by acquiring automobiles, apartments, and credit lines in the names of at least ten victims. Defendant fraudulently obtained approximately $176,967 in financing for a luxury vehicle and in personal loans.

Defendant has served under 16 months (37%) of his sentence, and his current projected full-sentence release date is July 9, 2022. Defendant is 30 years old and claims to have high blood pressure and asthma. FCI Jesup, where Defendant is incarcerated, currently has 105 active inmate COVID-19 cases and 19 active staff COVID-19 cases. *See* Federal Bureau of Prisons, *COVID-19 Home Confinement Information*, at https://www.bop.gov/coronavirus/ (last accessed November 12, 2020).

Defendant submitted an informal compassionate release request to the warden of his facility based on concerns about COVID-19 on or about May 11, 2020. The request was denied on May 20, 2020.

On June 9, 2020, Defendant filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 27). The motion was denied without prejudice on June 18, 2020, due to Defendant's failure to show that he had exhausted administrative remedies. (Doc. No. 28). Defendant filed a second compassionate release motion on July 7, 2020, evidencing satisfaction with the exhaustion requirement. (Doc. No. 29). This second motion was denied on July 22, 2020, because Defendant had not alleged a particularized risk of harm from COVID-19. (Doc. No. 30). On October 6, 2020, Defendant filed this third motion for compassionate release and requested appointment of counsel due to allegedly inadequate access to legal materials. (Doc. No. 31).

According to Defendant's BOP case manager, BOP has not considered Defendant as a candidate for home confinement.

**II.      ANALYSIS**

1. **Motion for Sentence Reduction**

A court may reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.[1]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G.

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

§ 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). In particular, a defendant's age may constitute an extraordinary or compelling reason if the defendant is 65 years old; "is experiencing a serious deterioration in physical or mental health because of the aging process"; and has served at least ten years or 75% of his term of imprisonment, whichever is less. Id. Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

Defendant's motion for a reduction of his sentence is denied for two reasons. First, Defendant does not identify "extraordinary and compelling reasons" for a sentence reduction within the meaning of § 3582(c)(1)(A) and the Sentencing Commission's policy statement because he does not suffer from any serious medical conditions increasing his risk of serious illness from COVID-19. Second, the statutory sentencing factors do not weigh in favor of Defendant's release.

Under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. U.S.S.G. § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

Defendant asserts that he suffers from two medical conditions that make him particularly susceptible to complications to COVID-19: high blood pressure and asthma. See (Doc. No. 34 Ex. A ("Medical Records")). As an initial matter, the CDC has not recognized that either condition places a person at a higher risk of severe illness from COVID-19; instead, the CDC concluded that both factors "might" contribute to an increased risk of severe illness from COVID-19.[2]

Moreover, there is evidence that both of Defendant's claimed medical conditions may be exaggerated to strengthen his compassionate release petitions. In August 2020, about one month after the Court denied Defendant's second motion for compassionate release due to his failure to state a particularized medical condition, Defendant reported to BOP that he suffered from asthma. Prior to that date, he had never reported having suffered from or having been diagnosed with asthma. A health care provider examined Defendant on August 24, 2020, and wrote:

30-year old AA male seen today for follow up on sick call he made last week. He

---

[2] See Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions*, at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fpeople-at-higher-risk.html.

presented to sick call stating he had childhood asthma and it was acting up. There is no mention of asthma in his records at all including intake and H&P on arrival. When questioned why this was not disclosed he reports "I didn't think to mention it. It was not bothering me then." . . . I suspect this inmate is malingering. Recently discharged from RDAP for gambling and dishonesty. He received money on his books and upon questioning, he was vague and refused to answer He again refused to answer regarding this subject again today. When questioned if he was attempting to obtain compassionate release with an asthma diagnosis he denied.

(Medical Records at 9).

Similarly, although Defendant's blood pressure is slightly elevated, he has not been diagnosed with hypertension or high blood pressure, and it simply requires monitoring. (Id. at 10-11). Regardless, there is no evidence that Defendant's elevated blood pressure or alleged asthma are improperly managed or render him particularly susceptible to serious complications from COVID-19.

But for the COVID-19 pandemic, Defendant would present no basis for compassionate release. His medical ailments do not present any impediment to his ability to provide self-care in the institution. The only question, then, is whether the risk of COVID-19 changes that assessment. It does not. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Courts have held that minor health conditions, like asthma and elevated blood pressure, do not rise to the level of an extraordinary and compelling reason warranting release when the inmate can only express generalized concerns about the existence of COVID-19. See, e.g., United States v. Moye, 2020 WL 6273905, at *2 (S.D.N.Y. Oct. 26, 2020) ("Defendant's compassionate release request essentially asks this Court to find that any individual who has diabetes, hypertension, and asthma and is held in federal prison is experiencing extraordinary and compelling circumstances warranting release. That conclusion is not warranted."). That conclusion is only bolstered where the evidence suggests the inmate is malingering. See United States v. Shulick, 2020 WL 3250584

(E.D. Pa. June 16, 2020) (denying release because the defendant's medical records did not establish moderate asthma; "there is no evidence that defendant ever sought or received treatment while incarcerated for any asthmatic episode. He has been taking his prescribed medications and has access to an inhaler to be used 'as needed.'").

Defendant also alleges that the staff at FCI Jesup has failed to follow BOP's COVID-19 protocols, including by allegedly failing to quarantine an inmate transferred from Butner FCI to FCI Jesup in September. Although Defendant's allegations are anecdotal, FCI Jesup indeed has more active inmate cases, with 105, than many other institutions. However, an outbreak at an institution, standing alone, cannot justify the release of an otherwise quite healthy 30-year-old; if that were the case, it is likely that nearly all of the inmates could identify some minor health ailment and thus the same entitlement to release as Defendant. Because Defendant cannot establish "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A), his motion is denied at this time.

Second, under the applicable policy statement, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). The § 3553(a) factors disfavor a sentence reduction. Defendant's current 42-month sentence appropriately reflects the seriousness of his offense, as it constitutes a below-guidelines 18-month sentence for identity theft and a statutorily mandated 24-month consecutive sentence for aggravated identity theft. Releasing Defendant after having served about 16 months, or about 37% of his sentence, would effectively disregard Congress's determination that 24 months of imprisonment is the appropriate penalty for aggravated identity theft. Courts have denied release for defendants with more severe medical conditions in institutions with outbreaks where early release would fail to reflect the seriousness of and provide just punishment for the offense. See United States v. Frost, C.A. No. 3:18-CR- 30132, 2020 WL

3869294, at *2 (D.S.D. July 9, 2020) (denying release for COVID-positive inmate with heart and lung disease at LSCI Butner, which had 567 active inmate cases at the time of denial, because inmate had been asymptomatic and early release would fail to reflect seriousness of offense). Accordingly, this Court denies the motion for a sentence reduction at this time.

2. **Motion for the Appointment of Counsel**

There is no Sixth Amendment right to appointed counsel in in connection with a Section 3582(c) motion. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000). Nor is there a statutory right to counsel under the Criminal Justice Act, 18 U.S.C. § 3006A(c). See, e.g., United States v. Whitebird, 55 F.3d 1007, 1010 (5th Cir. 1995) (defendant has no statutory right to counsel in connection with a § 3582(c) motion because such a motion is not an "ancillary matter" under § 3006A); United States v. Reddick, 53 F.3d 462, 464-65 (2d Cir. 1995) (same). Instead, Defendant requests appointment of counsel in the interests of justice because he does not have access to adequate legal materials.

The government does not take a position on Defendant's request for appointment of counsel. Instead, the government merely notes that limitations on prison services due to COVID-19 restrictions should not alone warrant the creation of an entirely new basis for the appointment of counsel in post-conviction relief.

The Court holds that the interests of justice do not warrant the appointment of counsel in this case because Defendant does not suffer from any medical condition rising to the level of an extraordinary and compelling reason for release in light of the COVID-19 pandemic.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release, Doc. No. 31, is **DENIED** without prejudice, and his motion for the appointment of counsel, Doc. No. 31, is **DENIED**.

Signed: November 23, 2020

Max O. Cogburn Jr.
United States District Judge